ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **GERMÁN SUÁREZ HERNÁNDEZ; JACKELINE FRANCO BONILLA; LUIS ALBERTO BERMÚDEZ BONILLA; Y SHEILA SUÁREZ PÉREZ** DEMANDANTE(S)-APELADA(S) <br><br> V. <br><br> **AT&T OF PUERTO RICO, INC.; CHUBB INSURANCE COMPANY OF PUERTO RICO; CAPE FEAR UTILITIES, LLC; CH RENTAL, LLC; FM TECHNOLOGY GROUP, LLC; MAPFRE PRAICO INSURANCE COMPANY; A Y B COMPAÑÍAS ASEGURADORAS; JOHN DOE Y RICHARD DOE** DEMANDADA(S)-APELADA(S) <br><br> **AT&T MOBILITY PUERTO RICO, INC. Y MASTEC NORTH AMERICA, INC.** CO-DEMANDADA(S)-APELANTE(S) | **KLAN202200942** <br><br> **consolidado con** | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de **SALINAS** <br><br> Caso Núm. **SA2019CV00094** (202) <br><br> Sobre: Daños y Perjuicios |
| **GERMÁN SUÁREZ HERNÁNDEZ; JACKELINE FRANCO BONILLA; LUIS ALBERTO BERMÚDEZ BONILLA; Y SHEILA SUÁREZ PÉREZ** DEMANDANTE(S)-APELADA(S) <br><br> V. <br><br> **AT&T OF PUERTO RICO, INC.; CHUBB INSURANCE COMPANY OF PUERTO RICO; CAPE FEAR UTILITIES, LLC; CH RENTAL, LLC; FM TECHNOLOGY GROUP, LLC; MAPFRE PRAICO INSURANCE COMPANY; A Y B COMPAÑÍAS ASEGURADORAS; JOHN DOE Y RICHARD DOE** DEMANDADA(S)-APELADA(S) <br><br> **CAPE FEAR UTILITIES, LLC** CO-DEMANDADA(S)-APELANTE(S) | **KLAN202200944** | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de **SALINAS** <br><br> Caso Núm. **SA2019CV00094** (202) <br><br> Sobre: Daños y Perjuicios |
| Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Juez Barresi Ramos. | | |

Número Identificador: SEN2024_____

*Barresi Ramos*, juez ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 14 de noviembre de 2024.

Comparece ante este Tribunal de Apelaciones, **AT&T MOBILITY PUERTO RICO, INC. (AT&T) y MASTEC NORTH AMERICA, INC. (MASTEC)** mediante *Alegato de la Parte Apelante* interpuesto el 28 de noviembre de 2022. En su escrito, nos solicita que revisemos la *Sentencia Parcial* dictaminada el 24 de agosto de 2022 por el Tribunal de Primera Instancia (TPI), Sala Superior de Salinas.[1] Mediante la antedicha decisión, se declaró *ha lugar* la *Solicitud de Desestimación Parcial y/o Sentencia Sumaria* presentada el 27 de enero de 2022 por **MAPFRE PRAICO INSURANCE COMPANY**, y en su consecuencia, se desestimó la *Demanda contra Coparte (CH Rental y MAPFRE)* entablada el 9 de noviembre de 2021 por **CAPE FEAR UTILITIES, LLC** así como, la *Demanda contra CoParte Enmendada* presentada el 8 de febrero de 2022 por **AT&T** y **MASTEC**.

La compañía **CAPE FEAR UTILITIES, LLC (CAPE FEAR)** comparece mediante *Apelación* instada el 28 de noviembre de 2022. Asimismo, nos solicita que revisemos la *Sentencia Parcial* dictada el 24 de agosto de 2022 por el Tribunal de Primera Instancia (TPI), Sala Superior de Salinas.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

**- I -**

El 14 de marzo de 2019, los señores **GERMÁN SUÁREZ HERNÁNDEZ; JACKELINE FRANCO BONILLA; LUIS ALBERTO BERMÚDEZ BONILLA; y SHEILA SUÁREZ PÉREZ** (señores **SUÁREZ HERNÁNDEZ**) incoaron una *Demanda* sobre daños y perjuicios contra varias empresas de la corporación **AT&T**; entre estas, **AT&T MOBILITY PUERTO RICO, INC;** el Departamento de

---

[1] Esta determinación judicial fue notificada y archivada en autos el 29 de agosto de 2022. Apéndice del *Alegato de la Parte Apelante*, págs. 515- 521.

Transportación y Obras Públicas (DTOP); Compañías de Comunicaciones Y y Z; Fulano de Tal; y Compañías Aseguradoras A, B y C.[2] Los señores **Suárez Hernández** interpelaron una compensación por los daños sufridos como consecuencia de un accidente de tránsito ocurrido el 15 de marzo de 2018. Expusieron que mientras transitaban por la carretera núm. 3, a la altura del municipio de Salinas, en un vehículo de motor marca Suzuki, modelo Forsa, cayeron en una excavación de unos trabajos que **AT&T** realizaba en el lugar. Lo cual provocó que el conductor perdiera el control y colisionara a otros dos (2) automóviles que viajaban en sentido contrario. Los señores **Suárez Hernández** explicaron que la excavación no contaba con iluminación, rótulos, vallas de seguridad, zafacones o algún otro dispositivo que alertara de su existencia.

En la *Demanda,* se incluyeron como partes co-demandadas a las contratistas D y F, que describieron como "entidades naturales o jurídicas de nombre desconocido que también responde[n] por hacer los trabajos de manera descuidad[a] y negligente [...]", añadiendo que, "[t]an pronto se conozca su identidad se notificará a este Honorable Tribunal".

Posteriormente, los señores **Suárez Hernández** advinieron en conocimiento de que **AT&T** había contratado a la compañía **MasTec** para que efectuara los trabajos en el lugar del accidente vehicular. Así las cosas, el 10 de junio de 2019, los señores **Suárez Hernández** presentaron una *Demanda Enmendada* en la cual se notificó que el nombre correcto de la "contratista D" era **MasTec**, e incluyeron a CHUBB Insurance Company of Puerto Rico, como su aseguradora.[3]

El 21 de junio de 2019, **AT&T** presentó *Contestación a Demanda*

---

[2] Apéndice del *Alegato de la Parte Apelante*, págs. 1- 7.

[3] *Íd.*, págs. 26- 32. El 11 de junio de 2019, se emitió *Sentencia Parcial* ordenando el archivo, por desistimiento, de la causa de acción contra las partes codemandadas AT&T of Puerto Rico, Inc. y AT&T Mobility Next Operations, LLC. A los pocos días, el 18 de junio de 2019, se decretó *Sentencia Parcial* concretando el archivo, por desistimiento, de la reclamación contra las partes codemandadas Departamento de Transportación y Obras Públicas y Estado Libre Asociado de Puerto Rico. Apéndice del *Alegato de la Parte Apelante*, págs. 33- 34.

*Enmendada* negando la mayoría de las alegaciones y conteniendo sus defensas afirmativas.[4] Más tarde, el 7 de agosto de 2019, **MASTEC** presentó su *Contestación a Demanda Enmendada* en la cual negó la mayoría de las aseveraciones de los señores **SUÁREZ HERNÁNDEZ**, y levantó defensas afirmativas.[5]

Seguidamente, el 24 de octubre de 2019, **MASTEC** remitió una misiva a los señores **SUÁREZ HERNÁNDEZ** en la cual enunció:

> Como parte del descubrimiento de prueba, le incluyo información con respecto a varios contratistas de MasTec y que eran quienes estaban realizando los trabajos a los que se refiere la demanda los cuales, alegadamente, son la causa de los da[ñ]os. No le había dado esta información anteriormente porque yo la vine a recibir la semana pasada.

Entre las compañías subcontratadas por **MASTEC** se enumeraron a FM TECHNOLOGY GROUP, LLC (FM TECHNOLOGY), **CH RENTAL, LLC** (CH RENTAL) y **CAPE FEAR**. CH RENTAL, LLC contrató, a su vez, a **MAPFRE PRAICO INSURANCE COMPANY** (MAPFRE), mientras que **CAPE FEAR** contrató a la aseguradora FCCI.

Ante esta situación, el 12 de diciembre de 2019, los señores **SUÁREZ HERNÁNDEZ** presentaron una *Segunda Demanda Enmendada*, en la cual incluyeron a las compañías **CAPE FEAR**, CH RENTAL, MAPFRE y FM TECHNOLOGY.[6] El 16 de diciembre de 2019, **MASTEC** y **AT&T** presentaron *Contestación a Segunda Demanda Enmendada*.[7]

Al tiempo, el 8 de mayo de 2020, **MASTEC** presentó *Demandas Contra Coparte* contra **CAPE FEAR**, CH RENTAL, FM TECHNOLOGY y MAPFRE.[8] Empero los señores **SUÁREZ HERNÁNDEZ,** así como **MASTEC** desistieron de su reclamación contra esta última.

El 14 de julio de 2020, CH RENTAL y MAPFRE presentaron *Moción de*

---

[4] *Íd.*, págs. 35- 38.
[5] Apéndice del *Alegato de la Parte Apelante*, págs. 39- 42. **MASTEC** no hizo mención alguna de otra entidad subcontratista que haya participado en la construcción.
[6] Apéndice del *Alegato de la Parte Apelante*, págs. 46- 53.
[7] *Íd.*, págs. 54- 58 y 59- 63.
[8] *Íd.*, págs. 64- 66; 67- 68; y 69- 71.

*Desestimación* al amparo de la Regla 10.2 de las de Procedimiento Civil de 2009, *infra*.[9] Razonaron que, para el 9 de diciembre de 2020, cuando fueron incluidas en el pleito mediante la *Segunda Demanda Enmendada*, la causa de acción contra CH RENTAL estaba prescrita, y "la parte Demandante debía conocer, o tomar pasos afirmativos para conocer, quienes eran los alegados responsables del daño [...], antes de que transcurriera el término prescriptivo para este tipo de reclamación".

Más adelante, el 11 de agosto de 2020, CAPE FEAR presentó su *Contestación a Segunda Demanda Enmendada*.[10] A los pocos días, el 19 de agosto de 2020, los señores SUÁREZ HERNÁNDEZ se opusieron a la solicitud de desestimación de CH RENTAL y MAPFRE.[11] Sustentándose en la teoría cognoscitiva del daño, replicaron que incluyeron en el pleito a CH RENTAL y MAPFRE dentro del término de un (1) año de haber advenido en conocimiento, mediante el descubrimiento de prueba, de la participación de estas compañías en las excavaciones. En la alternativa, propusieron que en la *Demanda* se incluyeron alegaciones contra CH RENTAL y MAPFRE, aunque bajo los nombres ficticios de "Contratistas D & F" y "Compañías aseguradoras A, B & C". El día 15 de diciembre de 2020, MASTEC presentó su *Oposición a Moción de Desestimación de CH Rental, LLC*.[12]

En cumplimiento con un requerimiento del tribunal, el 11 de febrero de 2021, CH RENTAL y MAPFRE presentaron un memorando de derecho. El 21 de mayo de 2021, se pronunció *Sentencia Parcial* en la cual se declaró *ha lugar* la solicitud de CH RENTAL y MAPFRE, desestimando así las reclamaciones contenidas en la *Segunda Demanda Enmendada* en su contra.[13] Determinó que los señores SUÁREZ HERNÁNDEZ tenían un (1) año a partir de la fecha del

---

[9] *Íd.*, págs. 72- 77.
[10] Apéndice del *Alegato de la Parte Apelante*, págs. 82- 88.
[11] *Íd.*, págs. 95- 101.
[12] *Íd.*, págs. 102- 108.
[13] *Íd.*, págs. 114- 119. Cabe señalar que el 5 de mayo de 2021, se decretó *Resolución* en la cual se declaró no ha lugar la solicitud de desestimación presentada por CH Rental, LLC en cuanto a la demanda coparte de MASTEC.

accidente para presentar su reclamación; y había transcurrido un (1) año y ocho (8) meses cuando demandaron a CH RENTAL y MAPFRE; así como, los señores **SUÁREZ HERNÁNDEZ** no demostraron satisfactoriamente "su imposibilidad de ejercer su causa de acción dentro del término prescriptivo estatuido en la ley". Los señores **SUÁREZ HERNÁNDEZ** solicitaron la reconsideración del dictamen, sin éxito.

El 7 de julio de 2021, **CAPE FEAR** presentó *Moción de Desestimación* cimentada en que el accidente ocurrió el 15 de marzo de 2018 y los señores **SUÁREZ HERNÁNDEZ** dejaron transcurrir unos veintiún (21) meses antes de incluir esta entidad.[14] Esto es, que los señores **SUÁREZ HERNÁNDEZ** no demostraron que les fuera imposible ejercer su causa de acción dentro del término prescriptivo de un (1) año, y no evidenciaron las diligencias realizadas para conocer la identidad de las personas o entidades que ocasionaron los daños.

El 9 de agosto de 2021, los señores **SUÁREZ HERNÁNDEZ** presentaron su oposición a la solicitud de desestimación de **CAPE FEAR**. Sustentaron que no fue hasta que recibieron la misiva de 24 de octubre de 2019, como parte del descubrimiento de prueba, que advinieron en conocimiento de que **MASTEC** había subcontratado las obras. Por ende, su reclamación contra **CAPE FEAR** no se encontraba prescrita.

Más tarde, el 9 de noviembre de 2021, **CAPE FEAR** presentó una *Demanda Contra Coparte* contra CH RENTAL y MAPFRE.[15] Manifestó que tanto CH RENTAL y MAPFRE habían incumplido en defenderle de la reclamación de los señores **SUÁREZ HERNÁNDEZ** y asumir su obligación de indemnizar, así como exonerar por completo de todas las perdidas como "asegurado adicional bajo la póliza de responsabilidad general de obligaciones". El 30 de noviembre de 2021, se decretó *Resolución* declarando

---

[14] Apéndice del *Alegato de la Parte Apelante*, págs. 125- 137.
[15] *Íd.*, págs. 150- 153.

*no ha lugar* la solicitud de desestimación presentada por **Cape Fear**.[16] En esta decisión, se consignó lo siguiente:

> "Es el descubrimiento de prueba una vía importante para obtener información de distinta naturaleza incluyendo el conocimiento de quienes son los responsables al agraviado. Ello es así, porque no siempre se conocen las partes desde el primer momento de la ocurrencia de los hechos que dan margen a la reclamación. Máxime que los hechos que originan el caso de autos o a las partes a quién se les pudiese imputar responsabilidad civil extracontractual no son necesariamente personas naturales que al momento de los hechos surgiera algún tipo de información que permitiera identificar las mismas. No podemos perder de perspectiva, que las responsabilidades extracontractuales o contractuales entre las partes demandadas son desconocidas por el demandante, salvo que en ocasiones se active o recurra a un razonable descubrimiento de prueba (una vez presentada la demanda y se activen las herramientas procesales y judiciales).
>
> [...]
>
> Siendo un hecho cierto que la parte demandante advino en conocimiento de la existencia de la parte codemandada Cape Fear Utilities, LLC, el 24 de octubre de 2019, luego de ejercitar el esfuerzo de investigación que proveen las reglas en cuanto [al] descubrimiento de prueba se concluye que la demanda enmendada de Cape Fear no está prescrita [...].

Ese mismo día, se dictaron *Resolución sobre Moción de Desestimación de Demanda de CoParte Contra Cape Fear*; y *Resolución sobre Moción de Desestimación de Demanda de CoParte Contra CH Rental*.[17] El 17 de diciembre de 2021, **Cape Fear** presentó una *Moción de Reconsideración.* Seguidamente, el 24 de enero de 2021, se decretó una *Resolución* en la cual se declaró *sin lugar* dicho petitorio. Ante ello, el 23 de febrero de 2022, **Cape Fear** acudió ante este Tribunal de Apelaciones mediante *Certiorari.* Dicho recurso le fue asignado el alfanumérico KLCE202200203.

Mientras tanto, el 27 de enero de 2022, MAPFRE presentó *Solicitud de Desestimación Parcial y/o Sentencia Sumaria*.[18] El 15 de febrero de 2022, **AT&T** y **MasTec** presentaron *Oposición a Moción de Desestimación de MAPFRE*

---

[16] *Íd.*, págs. 154-157.
[17] Apéndice del *Alegato de la Parte Apelante*, págs. 158-165 y 166-177.
[18] *Íd.*, págs. 178-388. Dicho petitorio está acompañado de copia de los siguientes documentos: (i) la póliza número 1600178004467 expedida por MAPFRE, págs. 192-388.

*Contra Cape Fear.*[19] En dicha fecha, **Cape Fear** presentó un *Escrito de Oposición a "Solicitud de Desestimación Parcial y/o Sentencia Sumaria" de la Demanda Contra CoParte (MAPFRE).*[20] Puntualizó que, según el lenguaje de la póliza, está ofrecía cubierta para la reclamación de **Cape Fear** y es asegurada bajo la póliza de MAPFRE, por lo que no procedía la desestimación de su causa de acción. El 24 de febrero de 2022, MAPFRE presentó *Solicitud de Desestimación Parcial y/o Sentencia Sumaria.*[21]

El 28 de febrero de 2022, **AT&T** y **MasTec** presentaron *Oposición a Entrada #251 (Soliitud de Desestimacion Parcial y/o Sentencia Sumaria de MAPFRE Contra AT&T y Mastec) y Contrasolictud de Sentencia Sumaria (para que se Resuelva que AT&T y Mastec son Aseguradas de MAPFRE).*[22] El 1 de marzo de 2022, MAPFRE presentó su *Réplica a Oposición Radicada por AT&T Mobility Puerto Rico,Inc. y MasTec North America, Inc.* en la cual alegó que no es una de las partes contratantes y solicitó la desestimación de la causa de acción en su contra contenida en la *Demanda Contra CoParte.*[23] Además, presentó *Réplica a Oposición Radicada por Cape Fear Utilities, LLC.*[24]

El 25 de mayo de 2022, se celebró una vista argumentativa. El 15 de junio de 2022, MAPFRE presentó una *Moción Suplementaria en Torno a Vista Argumentativa.*

En consecuencia, el 24 de agosto de 2022, se dictó la *Sentencia Parcial* apelada. En este dictamen, se decidió si procedía o no el petitorio sobre desestimación presentado por MAPFRE y se consignaron los siguientes hechos pertinentes a la controversia:

1.      MAPFRE expidió póliza número 1600178004467 de

---

[19] *Íd.*, págs. 399- 431. Esta súplica está acompañada de copia de los siguientes documentos: (i) algunas páginas del Agreement No. 1089CP between MasTec North America, Inc. and AT&T Services, Inc. págs. 405- 407; (ii) PO sobre trabajos realizados en área del accidente, pág. 408; (iii) páginas de la Sección 3.18 sobre Seguro del Agreement No. 1089CP, págs. 409-411; (iv) algunas páginas del Subcontractor Agreement, págs. 412-417; (v) Independant Subcontract Agreement (Cape Fear), págs. 418- 423; y (vi) la póliza número 1600178004467 expedida por MAPFRE, págs. 424- 431.

[20] *Íd.*, págs. 432- 448.

[21] *Íd.*, págs. 449- 462.

[22] Apéndice del *Alegato de la Parte Apelante*, págs. 463- 472.

[23] *Íd.*, págs. 473- 479.

[24] *Íd.*, págs. 480- 485.

responsabilidad comercial general, a favor de Cherox, Inc., como su asegurado principal. En la forma de Extended Name Schedule, Cherox, Inc. identificó, entre otros, a CH Rental, LLC., para que figurara como asegurado.

2. La póliza expedida por MAPFRE a favor de CH Rental tiene un término de vigencia de un (1) año, a computarse desde el 6 de agosto de 2017 hasta el 6 de agosto de 2018.

3. El 20 de diciembre de 2017, Cape Fear y CH Rental otorgaron un contrato intitulado "Independent Subcontractor Agreement".

4. A raíz de los daños percibidos por motivo de un accidente de auto ocurrido el 15 de marzo de 2018, en la Carretera Número 3, jurisdicción de Salinas, Puerto Rico, las partes demandantes presentaron una reclamación contra MAPFRE, como aseguradora de CH Rental.

5. El 21 de mayo de 2021, el Tribunal dictó Sentencia Parcial mediante la cual determinó que las causas de acción de los demandantes estaban prescritas. A esos efectos se ordenó la desestimación con perjuicio de la Segunda Demanda Enmendada contra CH Rental y MAPFRE.

6. El 9 de noviembre de 2021, Cape Fear radicó Demanda Contra CoParte, incluyendo MAPFRE, como aseguradora de CH Rental.

7. MAPFRE ha brindado a Cape Fear defensa, con reserva de derecho, como asegurado adicional.

8. El 10 de febrero de 2022, AT&T Mobility Puerto Rico, Inc. y MasTec North America, Inc. radicaron Demanda Contra CoParte Enmendada, en la cual incluyeron por primera vez a la compareciente, MAPFRE, en su carácter de aseguradora de CH Rental.

9. En la Póliza expedida por MAPFRE a favor de CH Rental, no figuran como asegurados y/o asegurados adicionales MasTec North America, Inc., y/o AT&T Mobility Puerto Rico Inc.

El 12 de septiembre de 2022, **AT&T** y **MASTEC** presentaron *Moción Solicitando Determinaciones de Hechos Adicionales y Reconsideración de Sentencia Parcial Desestimando Demanda de CoParte*.[25] Al día siguiente, el 13 de septiembre de 2022, **CAPE FEAR** presentó *Escrito en Solicitud de Reconsideración de Sentencia Parcial de Desestimación de la Demanda CoParte de Cape Fear contra MAPFRE [SUMAC 284]*.[26] Ese mismo día, CH RENTAL presentó *Moción Solicitando Determinaciones de Hecho Adicionales y/o Moción de Reconsideración [SUMAC 248]*.[27] El 14 de septiembre de 2022, **AT&T** y **MASTEC** presentaron *Moción Reaccionando a Otras Mociones de Reconsideración (Entradas #268 y 288)*.[28] El 21 de septiembre de 2022,

---

[25] Apéndice del *Alegato de la Parte Apelante*, págs. 522- 528.
[26] Apéndice de la *Apelación (CAPE FEAR)*, págs. 346- 352.
[27] *Íd.*, págs. 353- 364.
[28] *Íd.*, págs.370- 373.

MAPFRE presentó su *Oposición a Solicitudes de Determinaciones de Hechos Adicionales y Reconsideraciones*.[29] En consecuencia, el 25 de octubre de 2022, se intimó *Resolución* en la cual se declaró *no ha lugar* las solicitudes de reconsideración y de determinación de hechos adicionales; se sostuvo la *Sentencia Parcial*; y se pautó conferencia con antelación al juicio.[30]

Inconformes, el 28 de noviembre de 2022, **AT&T**, **MASTEC** y **CAPE FEAR** acudieron ante este Tribunal de Apelaciones. **AT&T** y **MASTEC** señalaron el(los) siguiente(s) error(es):

> Erró el TPI al no enmendar la Sentencia Apelada para incluir las determinaciones de hechos adicionales solicitadas por AT&T y MasTec, las cuales estaban incontrovertidas.

> Erró el TPI al resolver que AT&T y MasTec no son aseguradas adicionales en la póliza de MAPFRE.

> Erró el TPI al no resolver que la exclusión de responsabilidad contractual no aplica a la Demanda contra CoParte de AT&T y MasTec contra MAPFRE.

> **CAPE FEAR** reseñó el(los) siguiente(s) error(es):

> Erró el Honorable TPI al desestimar la Demanda Contra CoParte presentada por Cape Fear contra MAPFRE basado en que Cape Fear, como asegurado adicional en la póliza, solo tiene derecho a defensa y cubierta para "responder por los daños reclamados que hayan sido provocados por el asegurado principal CH Rental…" y "[A]l haberse desestimado por prescripción la causa de acción contra CH Rental no hay negligencia del asegurado principal que le pueda ser atribuida a Cape Fear.

El 13 de diciembre de 2022, intimamos *Resolución* concediendo, entre otras cosas, término de treinta (30) días a **GERMÁN SUÁREZ HERNÁNDEZ**; **JACKELINE FRANCO BONILLA**; **LUIS ALBERTO BERMÚDEZ BONILLA**; **SHEILA SUÁREZ PÉREZ**; **AT&T OF PUERTO RICO, INC**; **CHUBB INSURANCE COMPANY OF PUERTO RICO**; **FM TECHNOLOGY GROUP LLC**; **A Y B COMPAÑÍAS ASEGURADORAS**; **JOHN DOE** y **RICHARD DOE** para exponer su posición sobre el recurso. Posteriormente, el 10 de enero de 2023, MAPFRE presentó *Alegato de la Parte Apelada, MAPFRE PRAICO Insurance Company Caso*

---

[29] Apéndice del *Alegato de la Parte Apelante*, págs. 529- 550.
[30] *Íd.*, págs. 551- 558.

*KLAN202200942* y *Alegato de la Parte Apelada, MAPFRE PRAICO Insurance Company Caso KLAN202200944.*

Evaluado concienzudamente los expedientes de los casos y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

- II –

- A – *Desestimación*

La Regla 10.2 de las de Procedimiento Civil de 2009 instituye que las defensas de hecho o de derecho contra una reclamación deben presentarse antes de una alegación responsiva[31]. Una *moción de desestimación* bajo la precitada regla es aquella que presenta la parte demandada previo a contestar la demanda solicitando que se desestime la causa de acción presentada en su contra.[32]

Dicha Regla dispone como fundamentos para la desestimación: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; o (6) dejar de acumular una parte indispensable.[33] La falta de jurisdicción constituye "una defensa irrenunciable, que puede ser planteada a petición de parte o el tribunal *motu proprio* y en cualquier etapa de los procedimientos, incluso en fases apelativas".[34]

El estándar adjudicativo al evaluar una *m4oción de desestimación* exige que los tribunales tomen como ciertos "todos los hechos bien alegados en la demanda y considerarlos de la forma más favorable para la parte

---

[31] 32 LPRA Ap. V, R 10.2.
[32] Véase: R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, LexisNexis, (2017), págs. 305– 306.
[33] 32 LPRA Ap. V, R. 10.2. *Cobra Acquisitions v. Mun. de Yabucoa, et al.,* 210 DR 384, 396 (2022).
[34] *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 539 (2019).

demandante".[35] La obligación de tomar como ciertos únicamente los hechos bien alegados de la demanda supone excluir del análisis las conclusiones de derecho o las alegaciones redactadas de tal forma que su contenido resulte hipotético.[36]

Como parte de este estándar adjudicativo, los tribunales están llamados a interpretar las alegaciones de la demanda conjuntamente y de forma liberal a favor de la parte demandante, resolviendo toda duda a su favor y concediendo el beneficio de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda.[37] Ante ello, los tribunales deberán evaluar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'".[38] En otras palabras, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Así, si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones con el descubrimiento de prueba.[39]

De esta forma, solo procederá una *moción de desestimación* cuando una demanda carece de todo mérito, o la parte demandante no demuestre tener derecho a remedio alguno bajo cualesquiera hechos y estado de derecho que pudiera probar en un juicio.[40] Esto es, no "procede la desestimación, si la demanda es susceptible de ser enmendada".[41]

### - B – *Sentencia Sumaria*

---

[35] *Blassino Alvarado v. Reyes Blassino*, 2024 TSPR 93, 214 DPR___.

[36] J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2011, T. II, págs. 529 (citado en *Asoc. Importadores de Cerveza v. E.L.A., 171 DPR 140, 149 (2007) (Rebollo López, opinión de conformidad)).

[37] *González Méndez v. Acción Social et al., 196 DPR 213, 234 (2016).

[38] *Cruz Pérez v. Roldan Rodríguez et al., 206 DPR 261 267 (2021).

[39] Véase: R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 307.

[40] *Cruz Pérez v. Roldan Rodríguez et al., supra; Ortiz Matías et al. v. Mora Development, 187 DPR 649 (2013).

[41] *Ortiz Matías et al. v. Mora Development, supra.*

La *sentencia sumaria* es un mecanismo procesal extraordinario disponible para adjudicar controversias sin la celebración de un juicio.[42] Su propósito o finalidad es propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales, y en los cuales solo resta dirimir una controversia de derecho.[43]

Este mecanismo se encuentra instaurado por la Regla 36 de las de Procedimiento Civil de 2009.[44] Esta prescribe que cualquiera de las partes "podrá presentar […] una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[45]

Lo anterior implica que, la parte promovente debe demostrar que no existe *controversia sustancial* sobre algún hecho material, pues la *sentencia sumaria* solo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[46] Para ello, debe desglosar en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[47] La jurisprudencia interpretativa ha definido que "[u]n hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[48]

Por su parte, quien se opone a que se dicte *sentencia sumaria* está obligado a controvertir la prueba presentada, contestando de forma detallada

---

[42] *Birriel Colón v. Econo y otros*, 2023 TSPR 120; 213 DPR ___; *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).
[43] *Birriel Colón v. Econo y otros, supra*; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430; *Vera v. Dr. Bravo*, 161 DPR 308, 331 (2004).
[44] 32 LPRA Ap. V, R. 36.3 (a); *SLG Zapata-Rivera v. J.F. Montalvo, supra*, pág. 432.
[45] *Acevedo y otros v. Dpto. de Hacienda y otros*, 212 DPR 335 (2023).
[46] *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Ramos Pérez v. Univisión, supra*, pág. 213.
[47] Regla 36.3(a) de las de Procedimiento Civil de 2009, *supra*; *SLG Zapata-Rivera v. J.F. Montalvo, supra*.
[48] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión, supra*, pág. 213.

y específica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en juicio.[49] Es decir, no basta con presentar meras afirmaciones. Resulta insuficiente para derrotar una solicitud de *sentencia sumaria* una declaración jurada que meramente exponga conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal de los hechos.[50] Empero, será el análisis del derecho aplicable y de la existencia de alguna *controversia sustancial de hechos materiales* lo que determinará si procede dictar sentencia sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[51]

Al evaluar la procedencia de la solicitud de *sentencia sumaria* el tribunal **analizará los documentos que acompañan la moción de *sentencia sumaria*, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal**.[52] Por ello, "[t]oda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se opone a la solicitud de sentencia sumaria".[53]

No obstante, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; por el contrario, tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[54] Por tanto, "[existe] una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida".[55]

La parte promovente puede prevalecer por la vía sumaria si presenta prueba incontrovertible sobre todos los elementos indispensables de su causa

---

[49] *Ramos Pérez v. Univisión, supra*, pág. 214.
[50] *Íd.*, págs. 215- 216.
[51] *Ortiz v. Holsum*, 190 DPR 511, 525 (2014).
[52] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913 (1994). (énfasis nuestro).
[53] *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610- 611 (2000).
[54] *Ramos Pérez v. Univisión, supra*, pág. 214.
[55] *Íd.*

de acción. En cambio, la parte promovida puede derrotar la moción de tres (3) maneras diferentes: (1) si establece una controversia real de hechos sobre uno de los elementos de la causa de acción de la parte promovente; (2) si presenta prueba que apoye una defensa afirmativa, o (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la parte promovente.[56]

Ahora bien, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar [denegaciones] o concesiones de mociones de *sentencia sumaria*.[57] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009 y su jurisprudencia interpretativa. Ello supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor. Como resultado, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma instituidos en la Regla 36 de las de Procedimiento Civil de 2009.[58]

En esencia, si el foro primario **acogió la moción** y dictó sentencia sumariamente, nos corresponderá revisar que, efectivamente si existen hechos materiales en controversia.[59] De existir, procederemos entonces a cumplir con la exigencia de la Regla 36.4 de las de Procedimiento Civil de 2009 y exponer concretamente cuáles hechos materiales se encontró que están en controversia y cuáles están incontrovertidos.[60] Puede hacerse en el

---

[56] *Íd.*, pág. 217.
[57] *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118 (2015).
[58] *Birriel Colón v. Econo y otros, supra.*
[59] *Rivera Matos et al. v. Triple S et al., supra.*
[60] Regla 36.4. Pleito no decidido en virtud de moción - Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será **obligatorio** que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos

dictamen en el cual se disponga del caso y hacer referencia al listado enumerado de hechos incontrovertidos dispuestos por el foro recurrido. Si se determina que los hechos materiales realmente están incontrovertidos, se procederá a revisar de *novo* si el Tribunal de Primera Instancia adjudicó correctamente el derecho.

En palabras sencillas, los tribunales revisores estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales; y (3) comprobar si el derecho se aplicó de forma correcta.[61]

### - C – *Enmiendas o Determinaciones Iniciales o Adicionales*

Las Reglas de Procedimiento Civil de 2009 proveen ciertos mecanismos posteriores a una sentencia, resolución u orden, para aquella parte que resulte perdidosa por un dictamen emitido por el Tribunal de Primera Instancia. Entre estos, se encuentra la solicitud de enmienda o determinaciones de hechos iniciales o adicionales. La Regla 43.1 de Procedimiento Civil de 2009 lee:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes si éstas no se hubiesen hecho por ser innecesarias, de acuerdo con la Regla 42.2, podrá enmendar o hacer determinaciones adicionales o podrá enmendar la sentencia en conformidad. Si una parte interesa presentar una moción de enmiendas o determinaciones iniciales o adicionales, reconsideración o de nuevo juicio, éstas deberán presentarse en un solo escrito y el tribunal resolverá de igual manera. En todo caso, la suficiencia de la prueba para sostener las determinaciones podrá ser suscitada posteriormente aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, no haya presentado una moción para enmendarlas o no haya solicitado sentencia.

---

esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.

[61] *Birriel Colón v. Econo y otros, supra*, pág. 5; *Meléndez González et al. v. M. Cuebas, supra*, págs. 114– 116.

La moción de enmiendas o determinaciones iniciales o adicionales se notificará a las demás partes en el pleito dentro de los quince (15) días establecidos por esta regla para presentarla ante el tribunal. El término para notificar será de cumplimiento estricto.[62]

Es preciso destacar que, del texto de la precitada regla surge que ante una solicitud al amparo de esta "el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes, si [es que] éstas no se hubiesen hecho por innecesarias [...]."[63] Dicho esto, existen instancias en las que los tribunales pueden abstenerse de realizar determinaciones de hechos en sus dictámenes. Lo anterior nos lleva a referirnos a la Regla 42.2 de Procedimiento Civil de 2009. En lo pertinente enuncia:

No será necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho:
(a) al resolver mociones bajo las Reglas 10 ó 36.1 y 36.2, o al resolver cualquier otra moción, excepto lo dispuesto en la Regla 39.2;
(b) ...
(c) ...
(d) cuando el tribunal así lo estime por la naturaleza de la causa de acción o el remedio concedido en la sentencia.[64]

Por ello, no será requerido que un tribunal realice determinaciones de hechos al dictar una sentencia bajo la Regla 10.2 dado que su propósito es agilizar los procesos.[65] Por tanto, un tribunal no viene obligado a consignar determinaciones de hechos adicionales, cuando ya previamente declaró *"ha lugar"* una moción de sentencia sumaria presentada por una de las partes.

### - D – *Seguros*

Nuestro Tribunal Supremo ha reconocido que la industria de seguros en Puerto Rico está investida de un alto interés público dado al gran papel que juega en la protección de los riesgos que amenazan la vida o el

---

[62] 32 LPRA Ap. V, R. 43.1.
[63] *Íd.*
[64] 32 LPRA Ap. V, R. 42.2.
[65] 32 LPRA Ap. V, R. 10.2. R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., Ed. LexisNexis, 2017, pág. 466.

patrimonio de la ciudadanía.[66] Los seguros cumplen una función social importante al atenuar los riesgos inherentes a las relaciones comerciales en tanto que promueven el crecimiento estable de la economía.[67]

Debido a su trascendencia, esta empresa ha sido extensamente reglamentada mediante el Código de Seguros de Puerto Rico, conocida como la Ley Núm. 77 de 19 de junio de 1957, según enmendada, y a su vez se encuentra sujeta a las disposiciones del Código Civil de Puerto Rico, de manera supletoria.[68]

En específico, el Artículo 1.020, define seguro como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo".[69] Así, las personas y los negocios pueden proteger sus recursos al transferir el impacto monetario de ciertos riesgos a cambio del pago de una prima.[70]

Por otra parte, en cuanto a la interpretación del contrato de seguros, el propio Código de Seguros de Puerto Rico, implanta como norma de hermenéutica que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta".[71] La Alta Curia ha resuelto que el contrato de seguros es un convenio de adhesión, pues el asegurador es quien redacta el contrato en su totalidad.[72] Es por esto, que, debe interpretarse liberalmente en beneficio del asegurado.[73]

---

[66] *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871 (2023), citando a *San Luis Center Apts. et. al. v. Triple-S*, 208 DPR 824, 831 (2022).

[67] *Íd.*, citando a *Rivera Matos et. al. v. Triple-S et. al.*, *supra*, pág. 1019.

[68] *Íd.*; *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 148 (2021); 26 LPRA sec. 101 *et. set.*

[69] 26 LPRA sec. 102.

[70] *W.M.M., P.F.M. et al. v. Colegio et al., supra*; *R.J. Reynolds v. Vega Otero*, 197 DPR 699, 706 (2017); *Maderas Tratadas v. Sun Alliance et. al.*, 185 DPR 880, 897 (2012).

[71] 26 LPRA secc. 1125.

[72] *Feliciano Aguayo v. MAPFRE, supra*, pág. 151.

[73] *W.M.M., P.F.M. et al. v. Colegio et al., supra.*; *San Luis Center Apts. et. als. v. Triple-S, supra*, pág. 833.

La relación entre una aseguradora y su asegurado es de naturaleza contractual y se rige por lo pactado en el contrato de seguros.[74] Cuando se produce un suceso incierto previsto en el contrato de seguros, suelen suscitarse controversias.[75] Ante la ocurrencia del suceso incierto previsto en el contrato, el asegurado debe presentar su reclamación y la aseguradora está obligada a resolverla. Por tanto, al momento de interpretar las cláusulas, los términos y las condiciones, hay que tener presente que los contratos de seguros –al igual que todos los contratos– constituyen la ley entre las partes y, consecuentemente, obligan a estas.[76]

No obstante, es menester resaltar que "un seguro no responde por toda gestión imaginable del asegurado que pueda causar daño a terceros".[77] Para determinar, si en efecto, el seguro responde por ellos, es necesario examinar si existen cláusulas de exclusión, mediante las cuales el asegurador exceptúa determinados eventos, riesgos o peligros de la cubierta.[78] Cónsono con lo anterior, "[l]a cubierta se circunscribe a determinadas actividades específicamente delimitadas en la póliza conjuntamente con las exclusiones allí dispuestas, donde se exceptúan ciertas actividades por las que no viene obligado a indemnizar".[79] Ahora bien, si los términos de las cláusulas de exclusión son claros y aplican a una situación determinada, no podrá responsabilizarse a la aseguradora por aquellos riesgos expresamente exceptuados *(citas omitidas)*.[80]

Un contrato de seguros puede ser objeto de todas las alteraciones o modificaciones que se estimen convenientes siempre que las partes consientan y así se haga constar expresamente en el acuerdo o se incorpore a

---

[74] *López v. Atlantic Southern Ins. Co.*, 158 DPR 562, 568 (2003); *Quiñones López v. Manzano Pozas*, 141 DPR 139, 154 (1996); *Torres v. ELA*, 130 DPR 640, 651-652 (1992).
[75] *Feliciano Aguayo v. MAPFRE, supra*, pág. 151; *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 385- 386 (2009).
[76] *S.L.G. Francis-Acevedo v. SIMED, supra*, pág. 386.;
[77] *Maderas Tratadas v. Sun Alliance et al., supra*, pág. 900.
[78] *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1020, citando *S.L.G. Ortiz-Alvarado v. Great American*, 182 DPR 48, 74 (2011).
[79] *Maderas Tratadas v. Sun Alliance et al., supra*, pág. 900.
[80] *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1021, citando a *Viruet et al. v. SLG Casiano-Reyes,* 194 DPR 271, 279 (2015).

la póliza.[81] De modo que, las partes pueden realizar cambios en su póliza, ya sea con relación a sus términos y condiciones, así como también, con relación a sus asegurados. A estos efectos, el Artículo 11.180 del Código de Seguros expresa:

> (1) Ningún convenio que esté en conflicto con el contrato de seguro o que lo enmiende o amplíe será válido a menos que fuere por escrito y se hiciere formar parte de la póliza.
> (2) Ningún asegurador ni su representante podrán hacer ningún contrato de seguro o convenio relacionado con el mismo, que no se exprese en la póliza.
> (3) Los requisitos de este Artículo no se aplicarán a la concesión de beneficios adicionales a todos los tenedores de pólizas de un asegurador, o a una clase o clase de ellos, que no requieran aumentos en los tipos de primas o reducción o restricciones de cubierta.[82]

- III –

KLAN202200942

**AT&T** y **MasTec** puntearon que el foro apelado erró al no enmendar la *Sentencia Parcial* prescrita el 24 de agosto de 2022 para incluir las determinaciones de hechos adicionales solicitadas; al solucionar que no son aseguradas adicionales en la póliza de MAPFRE; y no resolver que la exclusión de responsabilidad contractual no aplica a la *Demanda contra CoParte* de **AT&T** y **MasTec** contra MAPFRE.

Ante el hecho de que se declaró *ha lugar* la *Solicitud de Desestimación Parcial y/o Sentencia Sumaria* presentada por MAPFRE y como consecuencia se desestimó la *Demanda contra CoParte* presentada por **Cape Fear** contra de CH Rental y MAPFRE; así como la *Demanda Contra CoParte Enmendada* presentada por **AT&T** y **MasTec** en contra de MAPFRE, se hacía innecesario incluir determinaciones de hechos adicionales. Toda vez que el dictamen fue dispuesto al amparo de la Regla 10.2 de las de Procedimiento Civil de 2009. Por lo cual, concluimos que no incidió el Tribunal de Primera Instancia al denegar las determinaciones de hechos adicionales solicitadas.

---

[81] *S.L.G. Francis-Acevedo v. SIMED, supra,* pág. 389.
[82] 26 LPRA secc. 1118.

En cuanto al segundo y tercer señalamiento de error, por estos encontrarse estrechamente relacionados, procederemos a discutirlos en conjunto. El 6 de agosto de 2017, MAPFRE expidió una póliza a favor de Cherox, Inc. Examinada la póliza, en el Extended Name Schedule, Cherox, Inc. incluyó, entre otros, a CH RENTAL como asegurado adicional.[83] En diciembre de 2017, CAPE FEAR y CH RENTAL suscribieron un Independent Subcontractor Agreement para efectuar unas labores en el área donde ocurrió el accidente. En consecuencia, MAPFRE no contrató con AT&T ni MASTEC. Por tanto, no existe una obligación o contrato entre MAPFRE, AT&T ni MASTEC. Éstos últimos, tampoco fueron instituidos como asegurados adicionales.

La persona que alegue que es asegurada en una póliza de seguros, deberá estar debida y expresamente nombrada en dicho contrato —como asegurado principal o adicional—; de lo contrario, se entenderá que no está asegurada. Asimismo, para alegar incumplimiento de contrato, deberá demostrar que fue parte del contrato en cuestión.

Por tanto, no habiendo AT&T y MASTEC formado parte del contrato de seguros, ni habiéndoseles incluido como asegurados adicionales en la póliza emitida por MAPFRE, concluimos que el segundo error no fue cometido. Como bien resolvió el foro primario, "al estos no haber sido incluidos como asegurados adicionales MAPFRE no tiene que responder por las reclamaciones que existan contra estas".

Con relación al tercer señalamiento, coincidimos en que tampoco incurrió en error el foro apelado en su determinación. Al evaluar la póliza, existen unas cláusulas de exclusiones especiales- entre ellas- la aseguradora no defenderá ninguna reclamación o "demanda", ni pagará daños y perjuicios que usted sea legalmente responsable de pagar, únicamente por razón de su

---

[83] Apéndice del *Alegato de la Parte Apelante*, pág. 202.

asunción de responsabilidad en un contrato o acuerdo.[84]

### KLAN202200944

Por otro lado, **CAPE FEAR** puntualizó que el tribunal de instancia incidió al desestimar la *Demanda Contra CoParte* presentada por ésta contra MAPFRE fundamentado en que como asegurado adicional en la póliza, solo tiene derecho a defensa y cubierta para "responder por los daños reclamados que hayan sido provocados por el asegurado principal CH Rental..." y "[A]l haberse desestimado por prescripción la causa de acción contra CH Rental no hay negligencia del asegurado principal que le pueda ser atribuida a Cape Fear".

En lo pertinente, el foro de primera instancia desestimó la *Segunda Demanda Enmendada* en contra de CH RENTAL y MAPFRE por prescripción. De modo que, al desestimarse dicha causa de acción en contra del asegurado principal, no hay negligencia que pueda imputársele a su compañía aseguradora. Posteriormente, también se desestimó la *Demanda contra CoParte,* presentada por **CAPE FEAR** en contra de MAPFRE, sustentado en que la póliza de seguros –contrato entre MAPFRE y CH RENTAL – no ofrece cubierta por los daños y perjuicios alegados. La reclamación en la *Demanda contra CoParte* se circunscribe a un alegado incumplimiento de CH RENTAL para con sus obligaciones contractuales, del cual, MAPFRE no formó parte.

El contrato de seguros a favor de **CAPE FEAR**, como asegurado adicional, no activa la totalidad de la póliza; ello, debido a la existencia de una cláusula de exclusión contra el incumplimiento contractual. Así, la extensión de la cubierta a **CAPE FEAR** es con relación a la responsabilidad, si alguna, que se viera obligada a satisfacer por la negligencia de CH RENTAL, y no la propia negligencia de **CAPE FEAR**. Es decir, MAPFRE se obligó a brindarle defensa y cubierta a **CAPE FEAR** por las reclamaciones que pudieran

---

[84] Traducción suplida. Véase texto original, Apéndice del *Alegato de la Parte Apelante*, pág. 265.

surgir de la negligencia de su asegurado principal, CH RENTAL. Resolvemos, por consiguiente, que no se equivocó el foro primario al desestimar la *Demanda contra CoParte*, en contra de MAPFRE.

- IV -

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia Parcial* dictaminada el 24 de agosto de 2022 por el Tribunal de Primera Instancia, Sala Superior de Salinas.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones